UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LUIS ORTEGA-ALVAREZ,

    Petitioner,

v.

ALBERTO R. GONZALES, et al.,

    Respondents.

CASE NO.  C07-0163-JLR-MJB

REPORT AND RECOMMENDATION

## I. INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Luis Ortega-Alvarez, proceeding through counsel, has filed a Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief, pursuant to 28 U.S.C. § 2241, challenging the legality of his arrest and detention by the U.S. Immigration and Customs Enforcement ("ICE").  (Dkt. #1).  Petitioner seeks an Order from this Court directing respondents to adjudicate his adjustment of status application, arguing that the actions by respondents in arresting him and subjecting him to removal violate his rights under INA § 245(i), 8 U.S.C. § 1255(i), and the Ninth Circuit's decision in *Perez-Gonzales v. Ashcroft*, 379 F.3d 783 (9th Cir. 2004).  Respondents have moved to dismiss, arguing, *inter alia*, that petitioner is lawfully detained pending the execution of his administratively final order of removal entered on

REPORT AND RECOMMENDATION
PAGE – 1

August 2, 1995. (Dkt. #12). Respondents further argue that the Court lacks jurisdiction to consider petitioner's claim that the government has wrongly refused to waive his inadmissability or to grant him adjustment of status based on the government's failure to follow the Ninth Circuit's decision in *Perez-Gonzalez*.

Having carefully reviewed the entire record, I recommend that petitioner's habeas petition (Dkt. #1) be DENIED and respondents' motion to dismiss (Dkt. #12) be GRANTED.

## II.   BACKGROUND AND PROCEDURAL HISTORY

Petitioner Luis Ortega-Alvarez is a native and citizen of Mexico. He first entered the United States without inspection near San Ysidro, California, on or about June 15, 1990. On September 27, 1990, petitioner was apprehended by the former Immigration and Naturalization Service[1] ("INS") in Blaine, Washington. The INS served petitioner with a Form I-120 letter directing Voluntarily Departure, ordering him to depart the United States by October 27, 1990. (Dkt. #14 at L2, R1-9). Petitioner failed to voluntarily depart. (Dkt. #14 at R29). On June 17, 1991, the INS apprehended petitioner again and served him with another Form I-120 letter directing Voluntary Departure by July 16, 1991. Petitioner again failed to voluntarily depart. *Id.*

On August 8, 1992, the INS encountered petitioner at the Skagit County Jail in Mount Vernon, Washington, following his arrest for "Failure to Appear-Minor in Possession." *Id.* The INS served petitioner with an Order to Show Cause ("OSC"), placing petitioner in deportation proceedings, and charging petitioner with deportability under Section 241(a)(1)(B), of the

---

[1]Effective March 1, 2003, the Immigration and Naturalization Service was abolished pursuant to the Homeland Security Act of 2002, 116 Stat. 2135, Pub. L. 107-296, *codified at* 6 U.S.C. § § 101, *et seq.*, and its immigration functions were transferred to the Department of Homeland Security ("DHS").

REPORT AND RECOMMENDATION
PAGE – 2

Immigration and Nationality Act ("INA"), 8 U.S.C. § 1251(a)(1)(B), for entering the United States without inspection. (Dkt. #14 at L7-8). On September 23, 1992, petitioner failed to appear for his deportation hearing, and the Immigration Judge ("IJ") ordered petitioner deported to Mexico *in absentia*. (Dkt. #14 at L9). On May 12, 1993, the INS issued a Warrant of Deportation, and mailed petitioner a Form I-166 "Bag and Baggage Letter," directing him to report to the INS office in Seattle, Washington on May 31, 1993, for deportation to Mexico. (Dkt. #14 at R54, R36). Petitioner did not report as directed.

On March 10, 1995, petitioner married Jennifer McFarland, a United States citizen. (Dkt. #14 at R185). On April 13, 1995, petitioner was encountered and subsequently arrested by the U.S. Border Patrol in Mount Vernon, Washington. A routine records check revealed that a Warrant of Deportation had been issued on May 12, 1993. (Dkt. #14 at R57). Petitioner was subsequently deported by immigration authorities on April 19, 1995. (Dkt. #14 at R133).

On July 18, 1995, the INS again encountered petitioner in Mount Vernon, Washington, and arrested him. *Id.* The INS served petitioner with another Order to Show Cause and Notice of Hearing, which charged him with being deportable from the United States pursuant to INA § 241(a)(1)(B), as an alien present in the United States without admission or parole. (Dkt. #14 at L21). On August 2, 1995, petitioner appeared with counsel before the IJ for his deportation proceedings and was granted voluntary departure in lieu of deportation on or before May 2, 1996. (Dkt. #14 at L83). The Order stated that if petitioner did not voluntarily depart from the United States as required, the Order would automatically convert into an order of deportation. Petitioner waived appeal of the IJ's order, rendering the order administratively final. *Id.*

On August 11, 1995, petitioner's wife filed an I-130 Immigrant Petition for Relative, on

REPORT AND RECOMMENDATION
PAGE – 3

petitioner's behalf, which was approved on October 4, 1995.[2] (Dkt. #14 at R194).

When petitioner failed to comply with his voluntarily departure order, the INS issued a Warrant of Deportation, and mailed petitioner a Form I-166 "Bag and Baggage Letter," directing him to report for deportation to Mexico on October 1, 1996. (Dkt. #14 at L90-93). Petitioner did not report as directed. On October 22, 1996, the INS issued a Notice of Immigration Bond Breached. (Dkt. #14 at R93).

On December 22, 2000, petitioner's wife filed a second I-130 Immigrant Petition for Relative, on petitioner's behalf, which was approved on August 16, 2001. (Dkt. #14 at R183). On April 26, 2001, petitioner filed an application for adjustment of status to that of Lawful Permanent Resident. On August 1, 2001, the District Director denied petitioner's application for adjustment of status because he "failed to voluntarily depart [the United States] and a Warrant of Deportation was issued on September 4, 1996 at Seattle, Washington ordering [petitioner] to be removed under Section 241(a)(1)(B) of the Immigration and Nationality Act." (Dkt. #14 at R158-92, R155-56). On August 28, 2001, petitioner submitted a Form I-212 Application for Permission to Reapply for Entry into the Untied States After Deportation and/or Removal. On December 31, 2001, the INS District Director returned petitioner's I-212 application, stating that it had been improperly filed with the INS rather than with a U.S. consulate office abroad. (Dkt. #14 at R139).

---

[2] "Approval of the 'I-130 petition does not automatically entitle the alien to adjustment of status as an immediate relative of a United States citizen.'" *Ngongo v. Ashcroft*, 397 F.3d 821, 823 (9th Cir. 2005)(quoting *Agyeman v. INS*, 296 F.3d 871, 879 (9th Cir. 2002). "An approved visa petition is merely a preliminary step in the visa application process. It does not guarantee that a visa will be issued, nor does it grant the alien any right to remain in the United States." *Ramilo v. DOJ*, 13 F. Supp. 2d 1055, 1057 n.3 (citing *Tongatapu v. Woodcraft Hawaii, Ltd. v. Feldman*, 736 F.2d 1305, 1308 (9th Cir. 1984)).

REPORT AND RECOMMENDATION
PAGE – 4

On January 31, 2007, the U.S. Immigration and Customs Enforcement ("ICE") arrested petitioner at his home. (Dkt. #14 at R133, R127). On February 1, 2007, petitioner filed the instant Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief, and a Motion and Declaration for Order Staying Removal. (Dkts. #1 and #2). The same day, the Court granted petitioner's request for a temporary stay of removal pending further ruling by the Court, and directed respondents to file a response to the motion for stay. (Dkt. #4). Respondents responded that they had no objection to a temporary stay of removal *pendente lite*. (Dkt. #8). Accordingly, the Court entered an Order granting a stay of removal pending the resolution of the habeas corpus action. (Dkt. #9). On March 12, 2007, respondents filed a Return and Motion to Dismiss. (Dkt. #12). Petitioner did not file a response.

### III. DISCUSSION

Petitioner "asserts that the actions of the respondents in arresting, and threatening to deport/remove him in the immediate future . . . are unlawful and in violation of the Immigration and Nationality Act, applicable regulations, and the Constitution." (Dkt. #1 at 12). Relying on the Ninth Circuit's decision in *Perez-Gonzalez v. Ashcroft*, 379 F.3d 783 (9th Cir. 2004), petitioner argues that he is eligible for adjustment of status because he applied for a waiver of inadmissability. Petitioner seeks an order from this Court ruling that he is entitled, pursuant to INA § 245(i), to apply for adjustment of status. (Dkt. #1 at 13). Respondents argue that petitioner is subject to a final administrative Order of Voluntary Departure/Deportation issued on August 2, 1995, and that he is lawfully detained pending the execution of that deportation order. (Dkt. #12 at 5). Respondents further maintain that the REAL ID Act of 2005, Pub. L. No. 109-13, Div. B, 119 Stat 231 (May 11, 2005), precludes this Court from addressing

REPORT AND RECOMMENDATION
PAGE – 5

petitioner's claim that he is entitled to adjustment of status to that of Lawful Permanent Resident pursuant to INA § 245(i). (Dkt. #12 at 10-12). The Court agrees with respondents.

The REAL ID Act of 2005 eliminated district court habeas corpus jurisdiction over final orders of deportation or removal and vested jurisdiction to review such orders exclusively in the courts of appeals:

> Notwithstanding any other provision of law (statutory or unstatutory), including section 2241 of title 28, United States Code, or any other habeas provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this Act, except as provided in subsection (e).

INA § 242(a)(5), 8 U.S.C. § 1252(a)(5). The REAL ID Act further provided:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien form the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28, or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or unstatutory), to review such an order or such questions of law or fact.

INA § 242(b)(9), 8 U.S.C. § 1252(b)(9). Furthermore, Section 242 (g) of the INA, 8 U.S.C. § 1252(g), as amended by the REAL ID Act, now provides,

> (g) Exclusive jurisdiction
>
> Except as provided in this section and notwithstanding any other provision of law (statutory or unstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

Thus, the only courts with subject matter jurisdiction to review such final orders are the courts

REPORT AND RECOMMENDATION
PAGE – 6

of appeals. Although the REAL ID Act did not eliminate habeas jurisdiction over challenges to detention that are independent of challenges to final orders of removal, petitioner's claims clearly present a challenge to the Attorney General's action to execute his administratively final order of removal. *Cf. Nadarajah v. Gonzales*, 443 F.3d 1069, 1075 (9th Cir. 2006) ("By its terms, the jurisdiction stripping provision [of the REAL ID Act] does not apply to federal habeas corpus petitions that do not involve final orders of removal.") As respondents point out, a Section 245(i) "penalty fee" adjustment of status and Section 212 waiver of inadmissability are forms of relief from deportation/removal. Accordingly, petitioner may only raise such claims by filing a Motion to Reopen his deportation proceedings with the Immigration Court or Board of Immigration Appeals, and, if unsuccessful, by filing a Petition for Review with the Ninth Circuit Court of Appeals. *See* INA § 240(c)(7), 8 U.S.C. § 1229a(c)(7); 8 C.F.R. §§ 1003.2, 1003.23. Accordingly, petitioner's habeas petition should be denied and dismissed for lack of jurisdiction, and the stay of deportation *pendente lite* should be lifted.

## IV. CONCLUSION

For the foregoing reasons, I recommend that respondents' motion to dismiss be granted, and that the action be dismissed. A proposed Order accompanies this Report and Recommendation.

DATED this 25th day of July, 2007.

MONICA J. BENTON
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE – 7